

RECEIVED

JUN 2 0 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

JANA LISHON PITTS and
ARTNER BENJAMIN ADAMS

CIVIL ACTION NO. 13-2287

versus

JUDGE TOM STAGG

MALLARD DRILLING CORPORATION,
ET AL.

## MEMORANDUM RULING

Before the court are two motions to dismiss, respectively filed by defendants Chesapeake Energy Corporation ("Chesapeake") and Roger Ellington ("Ellington"), pursuant to Federal Rule of Civil Procedure 12(b)(6). See Record Documents 21 and 27. For the reasons set forth below, Chesapeake's motion is **GRANTED** and Ellington's motion is **GRANTED**.

## I. BACKGROUND

The instant lawsuit was filed by Jana Lishon Pitts ("Pitts") and Artner Benjamin Adams ("Adams") (collectively "the plaintiffs")[1] against ten defendants,

---

[1] The court notes that the plaintiffs are appearing pro se and in forma pauperis, and the court therefore has a duty to broadly construe their complaint and filings. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972); Bernard v. Lafayette Consol. Gov't, No. 13-2339, 2013 WL 6662513 at *2

including Chesapeake and Ellington. See Record Document 1. The complaint is styled as a "Civil Rights/Fraud Complaint," invokes the jurisdiction of the court under the Fourteenth Amendment, and appears to state a claim under 42 U.S.C. § 1983 for "Deprivation Under Color of State Statute Ordinance Regulation, Custom or Usage of Any Rights, Privileges or Served by the United States Constitution." Id. Both Pitts and Adams claim they are descendants of an individual named Josephine Jones and that the defendants "have drilled on the Josephine Jones Estate in Desoto Parish, Louisiana, Section 22-12N-14W/22-14N-12W, earning millions of dollars on plaintiffs' ancestors' property, which is heir property" and that "heirs have not been paid royalties." Id. The complaint further states that

> Plaintiffs will no longer accept being cheated out of their inheritance caused by other people including family members due to their theft and greed. The land was left to take care of family. Our worth is more than 1/5 of an acre and more than $100.00 every year and a half. Plaintiffs are struggling financially and need the royalties.

Id.

The complaint also mentions a letter that was written to the plaintiffs' grandmother, Gertrude Pitts (who the plaintiffs state was the spouse of Josephine Jones' grandson), that was found in 2009. See id. The plaintiffs allege that Thomas

---

(W.D. La. Dec. 17, 2013).

Carmody, Sr. ("Carmody"), president of defendant Mallard Drilling Corporation ("Mallard"), asked to see the letter and that Pitts faxed the letter to Carmody. See id. The plaintiffs contend that Carmody told them he had a "trust fund for the heirs that never got paid and that he would make a call to Chesapeake." Id. Additionally, the complaint states that Carmody assigned Ellington "to take control." Id.

With regard to Chesapeake, the plaintiffs specifically allege that Chesapeake "has denied having other wells on the Josephine Jones Estate other than the Blackstone #239886 well" and "refuses to pay plaintiffs properly on the Blackstone #239886 well." Id. The complaint further states that Chesapeake's employees "will not give honest or accurate information or their last names when asked." Id. As for Ellington, the plaintiffs contend that he "contacted plaintiffs to get their contact information to send out leases to the heirs in California" and "sent out cover-up leases." Id. Additionally, the plaintiffs argue that Ellington "stated to [Pitts] that he was only aware of one well when he had knowledge of other wells" and that he "expressed his concern about the acreage after the fact." Id.

The plaintiffs filed the instant lawsuit on July 10, 2013. See id. The court granted the plaintiffs' motions to proceed in forma pauperis but denied their motions to appoint counsel. See Record Documents 10, 12, 13, and 14. Chesapeake and Ellington subsequently filed motions to dismiss the plaintiffs' claims against them.

See Record Documents 21 and 27. The plaintiffs filed a one-page, handwritten opposition to Ellington's motion. See Record Document 29. Additionally, Pitts mailed a letter to the court that the court is liberally construing as an opposition to Chesapeake's motion. See Record Document 25.

## II. ANALYSIS

**A.  Rule 12(b)(6) Standard.**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleading and its attachments. See Fed. R. Civ. P. 12(b)(6); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A pleading will survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009). The court must accept all of the plaintiffs' allegations as true. See Twombly, 550 U.S. at 550, 127 S. Ct. at 1962. However, the plaintiffs' pleading must contain more than a "formulaic recitation of the elements of a cause of

action." Id. at 555, 127 S. Ct. at 1965. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679, 129 S. Ct. at 1950.

When considering a motion to dismiss a complaint brought by pro se plaintiffs, the court must liberally construe the complaint. See Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Bernard v. Lafayette Consol. Gov't, No. 13-2339, 2013 WL 6662513 at *2 (W.D. La. Dec. 17, 2013). Nevertheless, pro se plaintiffs still must offer more than conclusory allegations to prevent dismissal. See Taylor, 296 F.3d at 378.

**B.    Section 1983 Claims Against Chesapeake And Ellington.**

Both Chesapeake and Ellington contend that the plaintiffs' complaint fails to state a valid cause of action under 42 U.S.C. § 1983. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding

5

for redress . . . .

42 U.S.C. § 1983. Section 1983 actions have two essential elements. "First, the conduct complained of must have been committed by a person acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Augustine v. Doe, 740 F.2d 322, 324-25 (5th Cir. 1984).

Because of its under color of state law element, "merely private conduct, no matter how discriminatory or wrongful," is excluded from section 1983's scope. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999)(internal quotations omitted). A number of tests have been used to determine if a private actor's conduct can be attributed to the state. See Cornish v. Correctional Servs. Corp., 402 F.3d 545, 549-50 (5th Cir. 2005); Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 352 (5th Cir. 2003). These tests consider whether the private actor is performing functions exclusively left to the state, whether the state has coerced or encourage the private actor's conduct, and whether the state and private actor are working together in some joint action. See Cornish, 402 F.3d at 549-50; Richard, 355 F.3d at 352. The fact that a private entity is subject to regulation by the state is not, by itself, enough to subject the private entity to liability under section 1983. See Cornish, 402 F.3d at 550.

Despite construing the plaintiffs' complaint as liberally as possible, no factual allegations therein show that either Chesapeake or Ellington was acting under color of state law. Neither Chesapeake nor Ellington has been accused of performing functions exclusively left to the state or of acting jointly with the state. Moreover, the plaintiffs have not claimed that the state encouraged or coerced either Chesapeake or Ellington to take particular actions. Similarly, neither of the documents that the plaintiffs filed in opposition to the motions contain any factual allegations by which the court could find that either Chesapeake or Ellington was acting under color of state law. Therefore, the plaintiffs have failed to establish an essential element of their section 1983 claim against both defendants, and both Chesapeake's and Ellington's motions are **GRANTED** as to the plaintiffs' section 1983 claim.

C. **Plaintiffs' Fourteenth Amendment Claims Against Chesapeake And Ellington.**

The plaintiffs' complaint, liberally construed, appears to set out a claim against both Chesapeake and Ellington based on the Fourteenth Amendment. However, the Supreme Court has clearly established that the Fourteenth Amendment applies only to actions by the states, and "not to acts of private persons or entities." Rendell-Baker v. Kohn, 457 U.S. 830, 837, 102 S. Ct. 2764, 2769 (1982). As discussed above, the plaintiffs have failed to show that either Chesapeake or Ellington is a state actor.

Therefore, both Chesapeake's and Ellington's motions are **GRANTED** as to the plaintiffs' Fourteenth Amendment claim.

### D. Plaintiffs' Fraud Claims Against Chesapeake And Ellington.

The plaintiffs' complaint appears to set out a fraud claim against Chesapeake and Ellington. A plaintiff must plead fraud with particularity. See Fed. R. Civ. P. 9(b). "As a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identify of the person making the misrepresentation and what he obtained thereby." Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)(internal quotation marks omitted). In short, Rule 9(b) requires that a complaint set out the who, what, when, where, and how the purported fraud occurred. See United States ex rel. Steury v. Cardinal Health, Inc., 735 F.3d 202, 204 (5th Cir. 2013)(internal quotations and citations omitted).

The plaintiffs' complaint does not set out sufficiently particular facts as to fraudulent conduct by either Chesapeake or Ellington. While the complaint and the oppositions filed by the plaintiffs do set out some particular actions taken by both Chesapeake and Ellington, the plaintiffs do not explain how any of these actions were fraudulent. Therefore, both Chesapeake's and Ellington's motions are **GRANTED** as to the plaintiffs' fraud claims.

E.   **Plaintiffs' Improper Payment Claim Against Chesapeake.**

The plaintiffs claim that they have not received royalties from Chesapeake to which they are entitled. Specifically, the complaint alleges that Chesapeake is refusing to pay the plaintiffs properly for the Blackstone #239886 well. See Record Document 1. Additionally, in their opposition letter, the plaintiffs contend that they "are not getting paid on all of the land wells, pipelines, etc." and that Chesapeake "is paying us whatever amount they decide and whenever they want." See Record Document 25.

The facts alleged by the plaintiffs are merely conclusory allegations. As Chesapeake notes in its memorandum in support of its motion, the plaintiffs have alleged they are the rightful heirs of Josephine Jones, but have not explained who Josephine Jones is or why being heirs is relevant. See Record Document 21. Additionally, the plaintiffs have not established that Chesapeake actually owes them any obligation to pay royalties. In fact, in a letter sent to Chesapeake, the plaintiffs claimed that neither of them gave Chesapeake permission to drill and that neither of them signed a lease agreement with Chesapeake. See Record Document 1, Ex. C. It is unclear why, if they are claiming to have never executed a lease agreement with Chesapeake, that the plaintiffs now feel they are entitled to royalties. The complaint simply fails to set out a coherent factual basis to support any claim for improper

9

payments against Chesapeake. Therefore, Chesapeake's motion is **GRANTED** as to the plaintiffs' claims against it for improper payments.

F.  **Plaintiffs' Claims Against Chesapeake And Ellington For Punitive Damages.**

Finally, the plaintiffs seek punitive damages in the amount of one hundred million dollars. Because the court is dismissing their section 1983 claims against both Chesapeake and Ellington, the plaintiffs are not entitled to punitive damages under that statute. Insofar as the plaintiffs seek punitive damages under state law, Louisiana has a general policy against punitive damages. See Arabie v. CITGO Petroleum Corp., 89 So. 3d 307, 317 (La. 2012). Louisiana law only allows an award of punitive damages where expressly authorized by the law of the state where the wrongful conduct occurred and also by the law of the state where either the injury occurred or the wrongful actor was domiciled. See La. Civ. Code art. 3546. Punitive damages awards now are limited to cases involving child pornography, a defendant driving while intoxicated, or sexual activity with a minor. See La. Civ. Code arts. 2315.3, 2315.4, and 2315.7. The plaintiffs have alleged no facts in their complaint that would justify an award of punitive damages against either Chesapeake or Ellington. Therefore, both Chesapeake's and Ellington's motions are **GRANTED** as to the plaintiffs' claims for punitive damages.

## III. CONCLUSION

For the reasons set forth herein, the court finds that the plaintiffs have not pled sufficient facts in their complaint for any of their claims against Chesapeake or Ellington to survive a motion to dismiss. Therefore, Chesapeake's motion to dismiss is **GRANTED** and all of the plaintiffs' claims against Chesapeake are **DISMISSED WITH PREJUDICE.** Additionally, Ellington's motion to dismiss is **GRANTED** and all of the plaintiffs' claims against Ellington are **DISMISSED WITH PREJUDICE.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 20th day of June, 2014.

JUDGE TOM STAGG